## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Michael Mason (B-52211),         )
                           )
         Plaintiff,      )
                           )     Case No. 20 C 911
        v.             )
                           )     Hon. Gary Feinerman
Miles, et al.,               )
                           )
         Defendants.    )

## ORDER

The court has reviewed the amended complaint [12] pursuant to 28 U.S.C. § 1915A and it is accepted for filing to the extent set forth below. The Court directs the Clerk of Court to (1) file the amended complaint [12]; (2) issue summonses for service of the amended complaint on Defendants Miles, Barnes, and Hunter by the U.S. Marshals Service; (3) terminate the remaining defendants as party defendants; and (4) send Plaintiff three blank USM-285 forms, a magistrate judge consent form, filing instructions, and a copy of this order. Plaintiff must complete the USM-285 forms (one for each Defendant) and return them to the Prisoner Correspondent by 12/2/2020. Failure to comply will result in the dismissal with prejudice of this case for want of prosecution. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released, and failure to comply with that requirement also may lead to the dismissal with prejudice of this suit. The Court appoints the U.S. Marshals Service to serve Defendants. The status hearing set for 11/6/2020 [17] is stricken and re-set for 12/15/2020 at 9:50 a.m.

## STATEMENT

Plaintiff Michael Mason, a prisoner at Danville Correctional Center, brings this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that he was subjected to various unconstitutional conditions of confinement at Stateville NRC while he was held there on court writs. By order of March 27, 2020, the Court dismissed Plaintiff's original complaint without prejudice for misjoinder. (Dkt. 6.) Now before the Court for initial review is Plaintiff's amended complaint.

Under 28 U.S.C. § 1915A, the Court is required to screen a prisoner's complaint and dismiss the complaint, or any claims therein, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour,* 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

The amended complaint alleges as follows. On October 24, 2018, Plaintiff was transferred to Stateville NRC on a court writ and remained there until December 5, 2018. (Dkt. 12 at pg. 4.) On October 24, 2018, Plaintiff and other inmates who had been processed were directed to go down a corridor and take a mattress from a pile against the wall. (*Id.* at pg. 6.) The mattresses were "worn down, filthy, and emit[ing] a foul odor." (*Id.*) The problem of worn and filthy mattresses "is pervasive and well known" by Defendants Warden Sherwin Miles, Assistant Warden Berneita Barnes, and Superintendent Darren Hunter. (*Id.*) Defendants refuse to allow prisoners to switch mattresses no matter how poor their condition. (*Id.*)

Prisoners at the NRC are issued one blanket and one sheet to use throughout the duration of their stay. (*Id.*) Those sheets and blankets were in "deplorable condition" when issued, and were soiled, smelly, discolored and tattered. (*Id.*) Because there was no laundry service for the sheets and blanket, Plaintiff had to wash them in his cell with soap. (*Id.*) Each time he was housed at NRC for a court writ, Plaintiff was provided sheets, blankets, and mattresses that were "filthy, smelly, and tattered." (*Id.* at pg. 7.) On February 18, 2019, Plaintiff was treated at sick call for a rash on his neck that was caused by the filthy bedding. (*Id.*) He was prescribed hydrocortisone. (*Id.*) Plaintiff often was reluctant to use the bedding because of its condition. (*Id.*)

The lights in the cells at the NRC are equipped with large, four-bulb fluorescent light fixtures. (*Id.*) The fixture is very close to the inmate who sleeps in the top bunk, as Plaintiff did. (*Id.* at pgs. 7-9.) The button to turn the light off within the cell did not work. (*Id.* at pg. 8.) A prisoner could request that that his light be turned off, but the unit officer had to call main control, "which was mostly never done." (*Id.*) The lights in the cell were "unbearably bright," particularly for the inmate in the top bunk. (*Id.*) Despite Plaintiff's "constant" requests to the unit officer to have the cell lights turned off, they remained on for long periods of time. (*Id.* at pg. 8.)

Due to this, Plaintiff was subjected to daily to "constant illumination" in his cell. (*Id.*) The cell lights would come on at about 2:30 p.m. and remain on until about 3:00 a.m. (*Id.*) Factoring in natural light during the daytime, Plaintiff was subjected to a state of "perpetual illumination." (*Id.*) An officer at NRC told him that it was a routine practice of NRC officers to leave the lights on as a form of "mental and psychological torture." (*Id.* at pgs. 8-9.) This is a systemic problem that persists because of the failure of Defendants Miles and Barnes to address it. (*Id.* at pg. 9.) Because of the constant illumination, Plaintiff suffered sleep deprivation, which hindered his ability to perform day-to-day activities, including preparing for his court appearances. (*Id.*)

Each NRC inmate must shower with their unit on their assigned days. (*Id.* at pgs. 9-10.) Plaintiff was assigned to Unit E, which was scheduled to shower on Tuesdays and Saturdays. (*Id.*

at pg. 10.) Although the showers on each unit were hot, the inmates in Unit E were forced to use a communal shower that was "freezing cold." (*Id.*) Defendants Miles, Barnes, and Hunter implemented a policy to form a "shower crew" of various staff members that would escort the inmates in Unit E to the communal shower. (*Id.*) The shower crew included Major Elberson, Lt. Bond, Lt. Porter, Lt. Simmons, and Lt. Koch. (*Id.* at 10-11.) Plaintiff complained to these officers and Assistant Warden Barnes about the cold showers, but alleges that his complaints were ignored. (*Id.* at pg. 10-12.)

The showers at the NRC were "unsanitary" because they were infested with gnats and flies, often flooded with putrid-smelling water, and were dirty and moldy. (*Id.* at pg. 12.) Defendants Miles, Barnes, and Hunter are aware of the inhumane living conditions and the fact that the hot water has not worked in the communal showers for years, but have not addressed the problems. (*Id.*) In November 2018, Plaintiff caught a "severe cold" as a result of the conditions in the communal shower. (*Id.*)

NRC prisoners are given one plastic "spork" for the duration of their stay at the facility, and they receive no napkins. (*Id.* at pg. 13.) The meals "fail to meet the recommended daily value and IDOC required value of 2,000 calories per day." (*Id.*) Defendants Miles, Barnes, and Hunter were aware the meals were "calorie deficient" but failed to act. (*Id.*)

During his frequent court writs, Plaintiff personally told Defendant Barnes that he is on a low-sodium diet, and had not been receiving his diet while at NRC. (*Id.*) Barnes told him that she would look into it, but he never received his diet tray. (*Id.*) A unit officer told Plaintiff that an unnamed dietary supervisor was responsible for ensuring that Plaintiff received his low-sodium diet, and that he would contact the dietary supervisor. (*Id.*) Plaintiff still did not receive it. (*Id.* at pg. 14.) That diet "is one of the recommended medical remedies" to treat his high blood pressure, and his blood pressure remained elevated due to the lack of a low-sodium diet. (*Id.*)

Plaintiff was forced to consume regular meals, which consisted of undercooked chicken, pork, hamburgers, and discolored lunchmeat. (*Id.*) He was served spoiled milk and inedible food "on countless occasions." (*Id.*) He experienced "traumatic weight loss" due to the deficient diet at the prison. (*Id.*)

Prisoners at the NRC on a court writ receive four to five hours of outdoor recreation each week. (*Id.* at 15.) The "yard" consists of inactive water fountains, a phone that often does not work, and a basketball rim with no basketballs provided. (*Id.*) Defendants fail to provide adequate out-of-cell exercise. (*Id.*)

There are no toilet facilities on the yard. (*Id.*) Defendants Miles, Barnes, and Hunter had a practice and policy of denying inmates access to a toilet during the four- to five-hour recreation period. (*Id.*) Due to his blood pressure medication, Plaintiff has to use the toilet more often than others. (*Id.* at pgs. 15-16.) He has been threatened with disciplinary action for attempting to relieve himself on the yard. (*Id.* at pg. 16.) Plaintiff suffered severe pain from being forced to "hold it" during his yard time. (*Id.*) Defendants deny prisoners access to toilet facilities to discourage them from using their yard time. (*Id.*)

Plaintiff seeks compensatory damages and injunctive relief related to these conditions of confinement, and sue Defendants in their official and individual capacities. (*Id.* at pgs. 3, 17-18.)

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement … [that include] … adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a colorable claim based on allegedly unconstitutional prison living conditions, a plaintiff must allege facts indicating that: (1) there was a deprivation that was objectively serious enough that it resulted "'in the denial of 'the minimal civilized measure of life's necessities'"; and (2) prison officials were deliberately indifferent to the deprivation. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834). Certain conditions may establish an Eighth Amendment violation in combination when they would not do so alone. *Id.* (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)). Some conditions, if endured for a significant period of time, may be sufficient to implicate the Constitution where a short-term problem would not be. *Id.*

Plaintiff may proceed against Defendants Miles, Barnes, and Hunter with his claims concerning unsanitary bedding, as he alleges this was a pervasive issue of which they were aware but failed to address. *See Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008) (lack of clean bedding may implicate the Eight Amendment). Plaintiff has also adequately alleged that they were aware of the unsanitary condition of the showers, which may support an Eighth Amendment claim. *See Gray*, 826 F.3d at 1005 ("rudimentary sanitation" is a basic human need). Plaintiff also may proceed against Defendants Miles and Barnes with a claim regarding the alleged constant illumination in his cell, as he contends it is a systemic issue they failed to address. *See id.* at 1008–09 (senior prison officials can be expected to know about or participate in creating systemic prison conditions). *see also Ames v. Randle*, 933 F. Supp. 2d 1028, 1035-36 (N.D. Ill. 2013) (collecting cases and observing that "constant illumination may be the basis for a viable Eighth Amendment claim"); *Keenan v. Hall,* 83 F.3d 1083, 1090–91 (9th Cir. 1996) (denying summary judgment where the prisoner alleged large florescent lights shone into his cell 24 hours a day, causing him sleeping problems).

As to Plaintiff's diet, some of the claims, such as being provided only one "spork" or not receiving napkins, do not rise to the level of a constitutional violation. However, prison officials must ensure that inmates receive adequate nutrition. *Williams v. Shah*, 927 F.3d 476, 479–80 (7th Cir. 2019). Plaintiff has adequately alleged for screening purposes that the food served lacked adequate nutritional value and that Defendants Miles, Barnes, and Hunter knew this but disregarded it. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (allegation that "food is well below nutritional value" stated a claim). Plaintiff also has stated a claim against Barnes and the unnamed dietary supervisor as to the alleged failure to provide him a medically necessary low-sodium diet. *See McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016) (jury could find deliberate indifference where prison officials canceled a prisoner's low cholesterol diet without consulting medical personnel).

However, to proceed against the dietary supervisor, Plaintiff will have to identify that individual, name him or her in a second amended complaint, and serve him or her in accordance with Civil Rule 4. When counsel enters an appearance on behalf of Defendants, Plaintiff should send interrogatories (written questions) to counsel seeking to identify this individual. Plaintiff

must then submit a second amended complaint identifying this individual so he or she can be served. Plaintiff should do so as soon as possible in light of the two-year statute of limitations for § 1983 claims in Illinois and any applicable tolling rules. *See Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014). Plaintiff is cautioned that an amended pleading supersedes the prior complaint and must stand complete on its own, so it must include all claims and Defendants.

All other claims and Defendants are dismissed. First, Plaintiff's allegations regarding "freezing cold showers" do not state a claim. Prisoners exposed to persistent cold temperatures or to a combination of conditions that prevent them from adequately warming themselves may be able to state a constitutional claim. *See Dixon v. Godinez,* 114 F.3d 640, 643–44 (7th Cir. 1997). But prisoners do not have a constitutional right to hot water. S*ee Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014); *see also Gibson v. Paquin*, 590 F. App'x 635, 637 (7th Cir. 2015) (dismissing claim where episodes of cold showers did not describe serious harm); *Mays v. Springborn*, 575 F.3d 643, 648–49 (7th Cir. 2009) (short-term exposure to cold temperatures that allegedly caused inmate to catch colds did not rise to the level of an objectively serious deprivation). And while Plaintiff also complains about the allegedly unsanitary condition of the showers, his allegations as to the members of the "shower crews"—Major Elberson, Lt. Bond, Lt. Porter, Lt. Simmons and Lt. Koch—concern only their interactions over the temperature of the showers. Plaintiff has not alleged facts indicating that they were deliberately indifferent to a serious risk of harm in regard to the unsanitary condition of the showers. Therefore, these Defendants are dismissed for failure to state a claim.

Plaintiff also has not stated a claim in regard to the limited recreation opportunities at the NRC. An "unjustified, lengthy deprivation" of the chance for out-of-cell exercise could violate the Eighth Amendment. *Winger v. Pierce*, 325 F. App'x 435, 436 (7th Cir. 2009) (citing *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001)). But there is no bright-line rule regarding the minimum hours or type of recreation a prisoner must receive. *See Watts v. Ramos*, 948 F. Supp. 739, 744 (N.D. Ill. 1996). Rather, the question is whether the prisoner's health is threatened due to a lack of exercise. *French*, 777 F.2d at 1255–56. Plaintiff's allegations of four to five hours of yard time each week fall short of suggesting an objectively serious deprivation, even if Plaintiff was not allowed to partake in certain activities, such as basketball. *See Vasquez v. Braemer*, 586 F. App'x 224, 228 (7th Cir. 2014) (four hours of outside recreation time each week did not violate the Eighth Amendment).

Plaintiff's allegations as to the lack of toilet facilities on the yard also do not state a claim. While access to a working toilet is among the "minimal civilized measure of life's necessities," s*ee Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012), lack of access to a toilet for relatively short periods of time generally does not implicate the Eighth Amendment, *White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018). In this instance, while Plaintiff alleges that he takes medication that makes him have to use the toilet more often than others, the only harm he describes from a lack of toilets on the yard is pain from having to wait to use the toilet. While this is unfortunate, it does not rise to the level of a constitutional deprivation. *See White*, 710 F. App'x at 262 (imposition of once-every-two hours limit on toilet use during lockdowns was constitutional despite "discomfort, pain, or embarrassment that even slight limits on toilet access can cause").

Plaintiff may proceed against Defendants Miles, Barnes, and Hunter in their individual capacities for damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, and n.10 (1989) (a damages suit against state official in his official capacity is a suit against the state itself, and so is barred by sovereign immunity). While prison officials may be sued in their official capacities for injunctive relief, Plaintiff is now housed at Danville Correctional Center and has not alleged facts indicating that he is likely to be re-transferred to the NRC. Any request for injunctive relief therefore is moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'").

The Court directs the Clerk of Court to issue summonses for service of the complaint on Defendants Miles, Barnes, and Hunter. The Court directs the Clerk to mail Plaintiff three blank USM-285 forms. Plaintiff must complete the USM-285 forms (one for each Defendant) and return them to the Prisoner Correspondent by 12/2/2020. Failure to comply will result in the dismissal with prejudice of this case for want of prosecution.

The Court appoints the U.S. Marshals Service to serve Defendants. The Court directs the Marshal to make all reasonable efforts to serve Defendants. The Court authorizes the Marshals Service to send requests for waivers of service consistent with Civil Rule 4(d) before attempting personal service.

The Court instructs Plaintiff to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Every document submitted by Plaintiff must include a certificate of service indicating the date on which Plaintiff gave the document to prison authorities for mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff.

November 3, 2020       /s/ Gary Feinerman
               United States District Judge